UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.: 1:19-cv-02974

| | |
|---|---|
| FRED NEKOUEE, individually, | : |
| | : |
| Plaintiff, | : |
| | : |
| vs. | : |
| | : |
| MNR, L.L.C., a Kansas limited liability company; | : |
| | : |
| | : |
| Defendant. | : |

_____/

## **COMPLAINT**
(Injunctive Relief Demanded)

PLAINTIFF, FRED NEKOUEE, individually, on his behalf and on behalf of all other mobility impaired individuals similarly situated (sometimes referred to as "Plaintiff"), hereby sues the Defendant, MNR, L.L.C., a Kansas limited liability company (sometimes referred to as "Defendant"), for injunctive relief, and attorney's fees, litigation expenses, and costs pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq. ("ADA").

1.      Plaintiff, Fred Nekouee, is an individual who resides in Lutz, Florida, in the County of Hillsborough.

2.      Defendant's property, the Hampton Inn has an address of 850 South Main Street, Longmont, Colorado 80501, in Boulder County, Colorado ("Hampton Inn").

3.      Venue is proper in the District of Colorado because venue lies in the judicial district of the situs of the property.   The Defendant's property is located in and does business within this judicial district.

4.      Pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343, this Court has been given

original jurisdiction over actions which arise from the Defendant's violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.   See also 28 U.S.C. § 2201 and § 2202.

5.      Plaintiff Fred Nekouee is a Florida resident, is sui juris, and qualifies as an individual with disabilities as defined by the ADA.   Fred Nekouee has progressive multiple sclerosis, weak limbs, and he requires the use of a wheelchair for mobility.

6.      Mr. Nekouee travels to the Longmont area every three to six months to accompany his brother at heavy equipment auctions and to visit heavy equipment dealerships, where he assists his brother compare prices to equipment available in other areas, or to help his brother evaluate whether to buy or sell heavy equipment, or to vacation.

7.      Fred Nekouee stayed at the Hampton Inn which forms the basis of this lawsuit on February 5, 2019 with a checkout on February 6, 2019.

8.      Fred Nekouee requested an accessible room.

9.      Fred Nekouee stayed in accessible room 109 at the Hampton Inn.

10.      Due to the barriers to access Fred Nekouee encountered at the Hampton Inn, Fred Nekouee is deterred from visiting the Hampton Inn to avail himself of the goods and services offered to the public there.

11.      Fred Nekouee visited the Longmont-Firestone area near the Hampton Inn in early August 2018 and again on September 29, 2018 through October 3, 2018 to attend a heavy equipment auction, and he visited Rocky Mountain National Park on October 2, 2018.

12.      The Plaintiff returned to the Longmont area near the Hampton Inn on February 3-6, 2019 and again on May 7-10, 2019.

13.      Fred Nekouee attended a heavy equipment auction on May 8, 2019 in Longmont, Colorado.

14.     The Plaintiff returned to the Longmont-Firestone area and visited the Hampton Inn on October 1, 2019, but upon observation that barriers to access at the property had not been removed, he decided not to stay at the Hampton Inn on his October 2019 visit.

15.     The Plaintiff plans to return to the Longmont-Firestone area in December 2019 or March 2020 to attend a heavy equipment auction and to vacation.

16.     Hampton Inn is close to the heavy equipment auction and dealerships he visits, and it is a good hotel location from which to make day trips to Rocky Mountain National Park.

17.     The Plaintiff likes to stay at moderately-priced hotels like Hampton Inn.

18.     The Plaintiff plans to return to the Hampton Inn again if the barriers to access are removed.

19.     The Plaintiff has encountered architectural barriers at the subject property.

20.     The barriers to access that the Plaintiff encountered at the property have endangered his safety, impaired his ability or those accompanying him to park a vehicle, and have impaired his ability to access the property.

21.     The Plaintiff's need to use a wheelchair limits his mobility when surfaces are not nearly flat.

22.     The Plaintiff cannot move up steep inclines or down steep slopes in his wheelchair because he lacks the strength and also risks tipping his wheelchair backwards or forwards.

23.     The Plaintiff encountered and observed barriers to access in the parking lot and walking surfaces, lobby restrooms, accessible guestroom 109, the restroom in the accessible room 109, and the fitness areas of the Hampton Inn.

24.     The Plaintiff encountered and observed barriers to access in the men's restroom in the lobby; so he tried to enter and use the women's restroom in the lobby.

25.    The cross slope of the walking surface on either side of the main entrance to the Hampton Inn is steeper than 1:48 (2%).

26.    In the parking lot, the parking space for disabled patrons to the left of the main entrance to the Hampton Inn (oriented as one faces the main entrance) has a cross slope steeper than 1:48.

27.    The Plaintiff is deterred from visiting the Hampton Inn because of the difficulties he will experience there until the property is made accessible to him in a wheelchair.

28.    During his October 2019 visit to the Longmont-Firestone area, Fred Nekouee returned to the Hampton Inn, and he observed that the barriers to access he had encountered in the parking lot, access aisles and walkways had not been removed.   Fred Nekouee is deterred from staying at the Hampton Inn.

29.    Defendant owns, leases, leases to, or operates a place of public accommodation (an inn, hotel, motel, or other place of lodging) as defined by the ADA, 42 U.S.C. § 12181(7)(A), and the regulations implementing the ADA, 28 CFR 36.201(a) and 36.104, the Hampton Inn.

30.    Hampton Inn is a place of public accommodation.

31.    Defendant is responsible for complying with the obligations of the ADA.

32.    Fred Nekouee has a realistic, credible, existing and continuing threat of discrimination from the Defendant's non-compliance with the ADA with respect to this property as described but not necessarily limited to the allegations in paragraph 38 of this Complaint. Plaintiff has reasonable grounds to believe that he will continue to be subjected to discrimination in violation of the ADA by the Defendant.

33.    Fred Nekouee desires to visit the Hampton Inn not only to avail himself of the goods and services available at the property but to assure himself that this property is in compliance with

the ADA so that he and others similarly situated will have full and equal enjoyment of the property without fear of discrimination.

34.     The Defendant has discriminated against the individual by denying him access to, and full and equal enjoyment of, the goods, services, facilities, privileges, advantages and/or accommodations of the building, as prohibited by 42 U.S.C. § 12182 et seq.

35.     The Defendant has discriminated, and is continuing to discriminate, against the Plaintiff in violation of the ADA by failing to, inter alia, have accessible facilities by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).

36.     Preliminary inspections of the Hampton Inn show that ADA violations exist.

37.     Physical conditions at the Hampton Inn are accurately described in each romanette (i) of each lettered subparagraph of paragraph 38 below.

38.     The ADA violations that Fred Nekouee personally encountered or observed at the Hampton Inn include, but are not limited to:

**WALKING SURFACES AND PARKING**

a.   (i) In the parking lot, there are no parking spaces with a sign with the term "van accessible."   (ii) In the parking lot, there are no parking spaces with a sign with the term "van accessible," in violation of Federal Law 2010, ADAAG §§ 208.2.4 and 502.6.   (iii) The Plaintiff observed this lack of van accessible signage, and it made it difficult for him to find an accessible parking space.   (iv) The action required to install van accessible signage is easily accomplishable and able to be carried out without much difficulty or expense.

b.   (i) In the parking lot to the right of the main entrance to the Hampton Inn, the

access aisle shown in the photograph below is less than 60 inches wide.   (ii) This access

aisle is less than 60 inches wide in violation of Federal Law 2010, ADAAG §§ 502.3.1.

(iii) Due to its narrow width, it was difficult for the Plaintiff to maneuver his wheelchair in

this access aisle.   (iv) The action required to restripe this access aisle and the adjoining

parking spaces is easily accomplishable and able to be carried out without much difficulty

or expense.



c.    (i) In the parking lot, the parking space for disabled patrons to the left of the main

entrance (as one faces the entrance) has a cross slope steeper than 1:48 and steeper than

3.1%.   (ii) The cross slope of this parking space for disabled patrons is steeper than 1:48

and steeper than about 4%, in violation of Federal Law 2010, ADAAG § 502.4.   (iii) The

steep cross slope in this parking space made the Plaintiff's wheelchair unstable. (iv) The

action required to reduce the cross slope in this parking space is easily accomplishable and

able to be carried out without much difficulty or expense.

d. (i) The cross slope of the walking surface to the right of the main entrance (as one faces the entrance) is steeper than 1:48 and steeper than 3.1%. (ii) The cross slope of this walking surface is steeper than 1:48 and steeper than 3.1%, in violation of Federal Law 2010, ADAAG § 403.3. (iii) The cross slope of this walking surface made the Plaintiff's wheelchair unstable while he was moving in his wheelchair on this walking surface. (iv) The action required to reduce the cross slope of this walking surface is easily accomplishable and able to be carried out without much difficulty or expense.

e. (i) The running slope of the access ramp to the main entrance in front of Hampton Inn is steeper than the maximum allowed slope of 1:12 (8%) and steeper than about 9%. (ii) The running slope of this access ramp is steeper than the maximum allowed slope of 1:12 (8%) and steeper than about 9%, in violation of Federal Law 2010, ADAAG § 405.2. (iii) Due to the running slope of this access ramp, the Plaintiff had difficulty moving in his wheelchair toward the entrance and its slope made his wheelchair unstable. (iv) The action required to reduce the running slope of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.

f. (i) The running slope of the access ramp shown in the photograph below has a running slope steeper than 1:12(8%) and steeper than 9%. (ii) The running slope of this access ramp is steeper than 1:12 (8%) and steeper than 11%, in violation of Federal Law 2010, ADAAG § 405.2. (iii) Due to the steep running slope of this access ramp, the Plaintiff required assistance to ascend and descend this ramp in his wheelchair. (iv) The action required to reduce the running slope of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.



g.   (i) The access ramp shown in the photograph in subparagraph (f) above does not have a landing at the top of the ramp.   (ii) This access ramp does not have a landing at the top of the ramp, in violation of Federal Law 2010, ADAAG § 405.7.   (iii) Due to the lack of a landing at the top of the access ramp, the Plaintiff had difficulty keeping his wheelchair stable turning toward the entrance.   (iv) The action required to construct a top landing to this ramp is easily accomplishable and able to be carried out without much difficulty or expense.

h.   (i) The running slope of the access ramp shown in the photograph below to the left of the main hotel entrance (as one faces the entrance) has a running slope steeper than 1:12 (8%) and steeper than 9%.   (ii) The running slope of this access ramp is steeper than 1:12 (8%) and steeper than 9%, in violation of Federal Law 2010, ADAAG § 405.2.   (iii) Due to the steep running slope of this access ramp, the Plaintiff required assistance to ascend and descend this ramp in his wheelchair.   (iv) The action required to reduce the running

slope of this access ramp is easily accomplishable and able to be carried out without much difficulty or expense.



i.   (i) The access ramp shown in the photograph in subparagraph (h) above does not have a landing at the top of the ramp.   (ii) This access ramp does not have a landing at the top of the ramp, in violation of Federal Law 2010, ADAAG § 405.7.   (iii) Due to the lack of a landing at the top of the access ramp, the Plaintiff had difficulty keeping his wheelchair stable turning toward the entrance and moving in his wheelchair to go down this ramp. (iv) The action required to construct a top landing to this ramp is easily accomplishable and able to be carried out without much difficulty or expense.

j.   (i) The slope of the sides of the curb ramp shown in the photograph in subparagraph (h) above is steeper than 1:10 (10%) and steeper than 11%.   (ii) The sides

of this curb ramp are steeper than 1:10 (10%) and steeper than 11%, in violation of Federal Law 2010, ADAAG § 406.3.   (iii) The Plaintiff encountered these curb ramp sides while moving in his wheelchair, and they posed a hazard to overturn his wheelchair.   (iv) The action required to reduce the slopes of theses curb ramp sides is easily accomplishable and able to be carried out without much difficulty or expense.

k.   (i) At the side entrance to the Hampton Inn shown in the photograph below, the slope of the surface within 60 inches of the door to this side entrance has a slope steeper than 1:48 and steeper than 3.1%.   (ii) The slope of the surface within the required maneuvering space of within 60 inches of this door to this side entrance has a slope steeper than 1:48 and steeper than 4%, in violation of Federal Law 2010, ADAAG § 404.2.4.4. (iii) Due to the slope of this surface within 60 inches of this side door, the Plaintiff' wheelchair slipped sideways as he tried to enter this door.   (iv) The action required to reduce the slope of the surface outside of this door is easily accomplishable and able to be carried out without much difficulty or expense.



**LOBBY AREA**

l.    (i) In the lobby area, the tops of the dining surfaces and work surfaces with electrical outlets are not between 28 and 34 inches above the floor.   (ii) The tops of these dining surfaces and work surfaces are not between 28 and 34 inches above the finish floor and are about 44 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 902.3.   (iii) Due to the height of the tops of these surfaces above the floor, the Plaintiff had difficulty using the table.    (iv) The action required to reduce the height of the tops of these surfaces is easily accomplishable and able to be carried out without much difficulty or expense.

**MEN'S RESTROOM IN THE LOBBY**

m.    (i) The force needed to open the door to the men's restroom in the lobby is more

than 5 pounds.   (ii) The force required to open this door exceeds the maximum allowed force of 5 pounds (22.2 N), pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAAG § 404.2.9.   (iii) The Plaintiff encountered this door in his wheelchair, and due to the force necessary to open this door, he had difficulty opening this door.   (iv) The action required to reduce the force necessary to open this door is easily accomplishable and able to be carried out without much difficulty or expense.

n.   (i) The time for the door to the men's restroom in the lobby to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than 5 seconds.   (ii) This condition is in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) The Plaintiff encountered this condition while moving in his wheelchair, and due to the short elapsed time for this door to close from an open position of 90 degrees, the Plaintiff required assistance to enter this men's restroom.   (iv) The action required to adjust the closing time of this door is easily accomplishable and able to be carried out without much difficulty or expense.

o.   (i) In the men's restroom in the lobby, the rear wall grab bar is less than 36 inches long.   (ii) This rear wall grab bar is only about 34 inches long and less than 36 inches long, in violation of Federal Law 2010, ADAAG § 604.5.2.   (iii) Due to its position and lack of length, the Plaintiff had difficulty using this rear wall grab bar to transfer himself from his wheelchair to the toilet.   (iv) The action required to replace this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

p.   (i) In the men's restroom in the lobby, the top gripping surface of the rear wall grab bar is higher than 36 inches above the floor.   (ii) The top gripping surface of this rear

wall grab bar is higher than 36 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 609.4.   (iii) Due to the height of the top gripping surface of this rear wall grab bar above the floor, the Plaintiff had more difficulty using this rear wall grab bar to transfer himself from his wheelchair to the toilet.   (iv) The action required to relocate/replace this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

q.   (i) In the men's restroom in the lobby, the top gripping surface of the side wall grab bar is higher than 36 inches above the floor.   (ii) The top gripping surface of this side wall grab bar is higher than 36 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 609.4.   (iii) Due to the height of the top gripping surface of this side wall grab bar above the floor, the Plaintiff had more difficulty using this side wall grab bar to transfer himself from his wheelchair to the toilet and back again.   (iv) The action required to relocate this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

r.   (i) In the men's restroom in the lobby, the toilet paper dispenser centerline is not between 7 and 9 inches from the front of the toilet.   (ii) The toilet paper dispenser centerline is not between 7 and 9 inches from the front of the toilet and is about 13 inches from the front of the toilet, in violation of Federal Law 2010, ADAAG § 604.7.   (iii) Due to the location of the toilet paper dispenser, the Plaintiff could not reach toilet paper from a normal sitting position on the toilet.   (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

s.   (i) In the men's restroom in the lobby, the bottom edge of the mirror's reflecting

surface is higher than 40 inches above the floor.   (ii) The bottom edge of this mirror's reflecting surface is higher than 40 inches above the finish floor and is about 49 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.   (iii) Due to the height of this mirror's reflecting surface above the floor, the Plaintiff could not see his face in this mirror from his wheelchair.   (iv) The action required to relocated this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

t.   (i) In the men's restroom in the lobby, the flush control to the toilet is not mounted on the open and wide side of the clear floor space.   (ii) The flush control to this toilet is not mounted on the open and wide side of the clear floor space, in violation of Federal Law 2010, ADAAG § 604.6.   (iii) Due to the location of the flush control, the Plaintiff could not flush this toilet from his wheelchair.   (iv) The action required to replace the tank on this toilet with one with a hole for the flush control on the other side is easily accomplishable and able to be carried out without much difficulty or expense.

**WOMEN'S RESTROOM IN THE LOBBY**

u.   (i) The force needed to open the door to the women's restroom in the lobby is more than 5 pounds.   (ii) The force required to open this door exceeds the maximum allowed force of 5 pounds (22.2 N) and is about 8 pounds, pertaining to the continuous application of force necessary to fully open a door, in violation of Federal Law 2010, ADAAAG § 404.2.9.   (iii) The Plaintiff encountered this door in his wheelchair, and due to the force necessary to open this door, he required assistance to open this door.   (iv) The action required to reduce the force necessary to open this door is easily accomplishable and able to be carried out without much difficulty or expense.

v.   (i) The elapsed time for the door to the women's restroom in the lobby to close

from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds. (ii) The elapsed time for this door to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) The Plaintiff encountered this door, and due to the short time it took to close, he required assistance to enter and to exit this restroom.   (iv) The action required to adjust the door closer is easily accomplishable and able to be carried out without much difficulty or expense.

w.   (i) In the women's restroom in the lobby, the drain pipe under the sink is not fully insulated.   (ii) The drain pipe under this sink is not fully insulated, in violation of Federal Law 2010, ADAAG § 606.5.   (iii) The Plaintiff used this sink at the risk of skin burns and injury to his legs due to the drain pipe not being fully insulated.   (iv) The action required to fully insulate the drain pipe under this sink is easily accomplishable and able to be carried out without much difficulty or expense.

x.   (i) In the women's restroom in the lobby, the space between the side wall grab bar and the top of the toilet paper dispenser below it is less than 1.5 inches.   (ii) The space between this side wall grab bar and the top of the toilet paper dispenser below it is less than 1.5 inches and is only about 0.25 inches, in violation of Federal Law 2010, ADAAG § 609.3.   (iii) Plaintiff observed this lack of space between the side wall grab bar and the toilet paper dispenser, and it deters him from staying at the Hampton Inn.   (iv) The action required to relocate the toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

y.   (i) In the women's restroom in the lobby, the toilet paper dispenser centerline is not between 7 and 9 inches from the front of the toilet.   (ii) The toilet paper dispenser

centerline is not between 7 and 9 inches from the front of the toilet and is about 13 inches from the front of the toilet, in violation of Federal Law 2010, ADAAG § 604.7.  (iii) The Plaintiff observed this location of the toilet paper dispenser, and it deters the Plaintiff from staying at the Hampton Inn since he cannot not reach toilet paper from a normal sitting position on the toilet.  (iv) The action required to relocate this toilet paper dispenser is easily accomplishable and able to be carried out without much difficulty or expense.

z.  (i) In the women's restroom in the lobby, the bottom edge of the mirror's reflecting surface is higher than 40 inches above the floor.  (ii) The bottom edge of this mirror's reflecting surface is higher than 40 inches above the finish floor and is about 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.3.  (iii) Due to the height of this mirror's reflecting surface above the floor, the Plaintiff could not see his face in this mirror from his wheelchair.  (iv) The action required to relocated this mirror is easily accomplishable and able to be carried out without much difficulty or expense.

**BREAKFAST AREA**

aa. (i) In the breakfast area, the coffee dispenser levers, the juice machine dispenser keys, the top fruit stand container, the egg and sausage container, the top shelf of the pastry and bread container, the lid on the oatmeal pot, and the waffle maker handle are all located higher than 48 inches above the floor.  (ii) In the breakfast area, the coffee dispenser levers, the juice machine dispenser keys, the top fruit stand container, the egg and sausage container, the top shelf of the pastry and bread container, the lid on the oatmeal pot, and the waffle maker handle are all located higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.2.  (iii) Due to the height of these items above the floor, the

Plaintiff tried but could not reach them from his wheelchair.   (iv) The action required to relocate these items or to lower the counter on which they are placed or mounted is easily accomplishable and able to be carried out without much difficulty or expense.

**ACCESSIBLE GUESTROOM 109**

bb.   (i) The operation of the lock to the entrance door to accessible guestroom 109 requires tight grasping, pinching, or twisting of the wrist.   (ii) The operation of the lock to the entrance door to accessible guestroom 109 requires tight grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG § 309.4.   (iii) The Plaintiff tried but could not operate this lock with a closed fist or loose grip.   (iv) The action required to replace this lock is easily accomplishable and able to be carried out without much difficulty or expense.

cc.   (i) On the inside of the entrance door to guestroom 109, the security latch is higher than 48 inches above the floor.   (ii) On the inside of the entrance door to accessible guestroom 109, the security latch is higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, § 404.2.7.   (iii) The Plaintiff observed the height of this security latch above the floor, and it deters him from staying at the Hampton Inn since he cannot operate this latch.   (iv) The action required to relocate this security latch is easily accomplishable and able to be carried out without much difficulty or expense.

dd.   (i) The elapsed time for the entrance door to guestroom 109 to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The elapsed time for this door to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than 5 seconds, in violation of Federal Law 2010, ADAAG §

404.2.8.1.   (iii) The Plaintiff encountered this door, and due to the short time it took to close, he required assistance to enter and to exit accessible guestroom 109.   (iv) The action required to adjust the door closer is easily accomplishable and able to be carried out without much difficulty or expense.

ee.   (i) In accessible guestroom 109, the clear floor space between the chair and the bed is less than 30 inches.   (ii) The clear floor space between the chair and the bed is less than 30 inches and only about 15 inches preventing access for an individual in a wheelchair to the night stand, and lamp and alarm on the nightstand, in violation of Federal Law 2010, ADAAG § 305.   (iii) Moving in his wheelchair, the Plaintiff could not access the nightstand, and lamp and alarm on the nightstand due to the narrow space between the chair and the bed.   (iv) The action required to relocate the chair and to put in place a written policy not to locate this heavy chair too close to the bed is easily accomplishable and able to be carried out without much difficulty or expense.

ff.   (i) In accessible guestroom 109, the hangers in the closet are higher than 48 inches above the floor.   (ii) The hangers in the closet are higher than 48 inches above the finish floor and as high as about 65 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff tried but could not reach these hangers from his wheelchair due to their height above the floor.   (iv) The action required to lower the bar and shelf on which the hangers are hung is easily accomplishable and able to be carried out without much difficulty or expense.

gg.   (i) In accessible guestroom 109, the extra blanket in the closet is on a shelf that is higher than 48 inches above the floor.   (ii) The extra blanket is on a shelf in the closet that is higher than 48 inches above the finish floor and as high as about 69 inches above

the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) The Plaintiff tried but could not reach this extra blanket on this shelf from his wheelchair.   (iv) The action required to lower this shelf is easily accomplishable and able to be carried out without much difficulty or expense.

hh.   (i) In accessible guestroom 109, the iron holder for the iron is installed higher than 48 inches above the floor.   (ii) This iron holder for the iron is installed higher than 48 inches above the finish floor and as high as about 52 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) From his wheelchair, the Plaintiff tried but could not reach this iron.   (iv) The action required to lower the iron holder is easily accomplishable and able to be carried out without much difficulty or expense.

ii.   (i) In accessible guestroom 109, the low end of the drapery rod pull is higher than 48 inches above the floor.   (ii) The low end of this drapery rod pull is higher than 48 inches above the finish floor and as high as about 54 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.   (iii) From his wheelchair, the Plaintiff tried but could not reach this drapery rod pull to operate the curtains.   (iv) The action required to extend or replace this drapery rod pull is easily accomplishable and able to be carried out without much difficulty or expense.

**RESTROOM IN ACCESSIBLE GUESTROOM 109**

jj.   (i) In the restroom in accessible guestroom 109, the restroom door has a pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway that is less than 18 inches.   (ii) This restroom door has a pull side maneuvering clearance in a front approach beyond the latch and parallel to the doorway that is less than 18 inches

and only about 12 inches, in violation of Federal Law 2010, ADAAG § 404.2.4.   (iii) The

Plaintiff had difficulty in his wheelchair exiting this restroom due to the lack of pull side

maneuvering clearance.   He required assistance to exit the restroom.

kk.   (i) In the restroom of accessible guestroom 109, the threshold to the shower

compartment is more than 0.5 inches high.   (ii) The threshold to this standard roll-in type

shower compartment is about 1 inch high and higher than a maximum of 0.5 inches, in

violation of Federal Law 2010, ADAAG §§ 303 and 608.7.   (iii) Due to its height, the

Plaintiff required assistance to move his wheelchair over this threshold and into the shower

compartment. (iv) The action required to reduce the height of this threshold is easily

accomplishable and able to be carried out without much difficulty or expense.

ll.   (i) In the restroom in accessible guestroom 109, the shower spray head and its

handle are higher than 48 inches above the floor of the shower.   (ii)   This condition is in

violation of Federal Law 2010, ADAAG § 607.6.   (iii) The Plaintiff tried but could not

reach this shower spray head handle due to its height above the floor of the shower.   (iv)

The action required to relocate this shower spray head and to put in place a written policy

to require that this shower spray head and its handle be placed at or lower than 48 inches

above the shower floor when a guest leaves are easily accomplishable and able to be carried

out without much difficulty or expense.

mm.   (i) In the restroom in accessible guestroom 109, the operation of the height

adjustment of the shower spray head requires tight grasping, pinching, or twisting of the

wrist.   (ii) The operation of the height adjustment of the shower spray head requires tight

grasping, pinching, or twisting of the wrist, in violation of Federal Law 2010, ADAAG §§

608.6 and 309.4.   (iii) Once the spray head was lowered within reach for the Plaintiff by

another person, it could not be adjusted by the Plaintiff with a closed fist or loose grip. (iv) The action required to replace the height adjustment knob to the shower spray head is easily accomplishable and able to be carried out without much difficulty or expense.

nn.   (i) In the restroom in accessible guestroom 109, the rear wall grab bar does not extend a minimum of 12 inches from one side and 24 inches on the other side of the centerline of the water closet.  (ii) This condition is in violation of Federal Law 2010, ADAAG § 604.5.2.  (iii) Due to the location of this rear wall grab bar, the Plaintiff had great difficulty using this rear wall grab bar to transfer himself from his wheelchair to the toilet.  (iv) The action required to adjust the location of this rear wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

oo.   (i) In the restroom in accessible guestroom 109, the side wall grab bar does not extend at least 54 inches from the rear wall.   (ii) This side wall grab bar only extends about 50 inches from the rear wall and not a required minimum of 54 inches from the rear wall, in violation of Federal Law 2010, ADAAG § 604.5.1.   (iii) Due to the location of this side wall grab bar, the Plaintiff had difficulty transferring himself from his wheelchair to the toilet and back again.   (iv) The action required to replace this side wall grab bar is easily accomplishable and able to be carried out without much difficulty or expense.

pp. (i) In the restroom in accessible guestroom 109, the distance from the toilet centerline to the side wall is more than 18 inches.  (ii) This condition is in violation of Federal Law 2010, ADAAG § 604.2.   (iii) Due to the location of this toilet from the side wall, the Plaintiff had difficulty reaching the side wall grab bar and difficulty reaching the toilet paper.  (iv) The action required to relocate this toilet is easily accomplishable and able to be carried out without much difficulty or expense.

qq.   (i) In the restroom of accessible guestroom 109, the flush control on the toilet is not accessible to an individual in a wheelchair.   (ii) The flush control on the toilet is not accessible to an individual in a wheelchair since access is blocked by the sink and its counter, in violation of Federal Law 2010, ADAAG § 604.6.   (iii) The Plaintiff could not flush the toilet from his wheelchair due to the location of the sink and its counter and the flush control.   (iv) The action required to install a sink with a smaller counter is easily accomplishable and able to be carried out without much difficulty or expense.

rr.   (i) In the restroom in accessible guestroom 109, the coat hook is higher than 48 inches above the floor.   (ii) This coat hook is higher than 48 inches above the finish floor and as high as about 69 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 603.4.   (iii) Due to its height above the floor, the Plaintiff could not use this coat hook.   (iv) The action required to relocate this coat hook is easily accomplishable and able to be carried out without much difficulty or expense.

ss.   (i) In the restroom of accessible guestroom 109, the space between the top gripping surface of the side wall grab bar and the phone above it is less than 12 inches.   (ii) The space between the top gripping surface of the side wall grab bar and the phone above it is less than 12 inches and is only about 8 inches, in violation of Federal Law 2010, ADAAG § 609.3.   (iii) The Plaintiff used this side wall grab bar to transfer himself from his wheelchair to the toilet and this phone made it very difficult to grab the bar and to get by this phone.   (iv) The action required to relocate this phone is easily accomplishable and able to be carried out without much difficulty or expense.

**POOL**

tt.   (i) The elapsed time for the entrance door to the pool area to close from an open

position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The elapsed time for this door to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) The Plaintiff encountered this door, and due to the short time it took to close, he required assistance to enter the pool area.   (iv) The action required to adjust the door closer is easily accomplishable and able to be carried out without much difficulty or expense.

uu. (i) The entrance to the pool area does not have signage with the International Symbol of Accessibility.   (ii) The entrance to the pool area does not have signage with the International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG §§ 216.6 and 703.7.2.1.   (iii) The Plaintiff observed the lack of signage with the International Symbol of Accessibility at the entrance to the pool, and it deters him from visiting Hampton Inn.   (iv) The action required to install signage with the International Symbol of Accessibility at the entrance to the pool is easily accomplishable and able to be carried out without much difficulty or expense.

**HALLWAY VENDING**

vv.   (i) In the hallway vending area, the dollar bill inlet to the soda vending machine is higher than 48 inches above the floor, and the snack vending machine keys are higher than 48 inches above the floor.   (ii) The dollar bill inlet to the soda vending machine is about 51 inches above the finish floor and higher than 48 inches above the finish floor, and the snack vending machine keys are about 54 inches above the finish floor and higher than 48 inches above the finish floor and both are outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.2.   (iii) The Plaintiff

tried but could not reach the dollar bill inlet to the soda vending machine and the keys to the snack vending machine from his wheelchair due to their height above the floor.   (iv) The action require to relocate or adjust these vending machine components or to replace these vending machines is easily accomplishable and able to be carried out without much difficulty or expense.

**LAUNDRY**

ww.        (i) The elapsed time for the entrance door to the laundry to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.   (ii) The elapsed time for this door to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.   (iii) The Plaintiff encountered this door, and due to the short time it took to close, he required assistance to enter the laundry.   (iv) The action required to adjust the door closer is easily accomplishable and able to be carried out without much difficulty or expense.

xx.   (i) The entrance to the guest laundry does not have signage with the International Symbol of Accessibility.    (ii) The entrance to the guest laundry does not have signage with the International Symbol of Accessibility, in violation of Federal Law 2010, ADAAG §§ 216.6 and 703.7.2.1.   (iii) The Plaintiff observed the lack of signage with the International Symbol of Accessibility at the entrance guest laundry, and it deters him from visiting Hampton Inn.   (iv) The action required to install signage with the International Symbol of Accessibility at the entrance to the guest laundry is easily accomplishable and able to be carried out without much difficulty or expense.

**FITNESS CENTER**

yy.  (i) The elapsed time for the entrance door to the fitness center to close from an open position of 90 degrees to 12 degrees from the latch is less than 5 seconds.  (ii) The elapsed time for this door to close from an open position of 90 degrees to 12 degrees from the latch is about 3 seconds and less than 5 seconds, in violation of Federal Law 2010, ADAAG § 404.2.8.1.  (iii) The Plaintiff encountered this door, and due to the short time it took to close, he required assistance to enter the laundry.  (iv) The action required to adjust the door closer is easily accomplishable and able to be carried out without much difficulty or expense.

zz. (i) In the fitness center, the clear floor space between pieces of equipment is less than 30 inches.  (ii) The clear floor space between pieces of equipment is less than 30 inches, in violation of Federal Law 2010, ADAAG § 305.  (iii) The Plaintiff could not access the end of the weight rack while moving in his wheelchair since the clear floor space between the weight rack and the bench is only about 11 inches wide and less than 30 inches; and the Plaintiff could not access the towel shelf moving in his wheelchair since the clear floor space between the weight rack and the towel shelf is only about 22 inches wide.  (iv) The action required to provide 30 inches of clear floor space between pieces of equipment and to put in place a written policy to this effect is easily accomplishable and able to be carried out without much difficulty or expense.

aaa.      (i) In the fitness center, the dispenser to the wall-mounted hand sanitizer is higher than 48 inches above the floor.  (ii) In the fitness center, the dispenser to the wall-mounted hand sanitizer is about 57 inches above the finish floor and higher than 48 inches above the finish floor, in violation of Federal Law 2010, ADAAG § 308.2.  (iii) The

Plaintiff tried but could not reach this hand sanitizer from his wheelchair due to its height above the floor.  (iv) The action required to relocated this hand sanitizer is easily accomplishable and able to be carried out without much difficulty or expense.

bbb.    (i) In the fitness center, the coat hooks are higher than 48 inches above the floor.  (ii) These coat hooks are as high as about 67 inches above the finish floor and higher than 48 inches above the finish floor and outside of the reach range of an individual in a wheelchair, in violation of Federal Law 2010, ADAAG § 308.2.  (iii) The Plaintiff observed the height of these coat hooks above the floor and above his reach range, and they deter him from staying at the Hampton Inn.  (iv) The action required to relocate these coat hooks is easily accomplishable and able to be carried out without much difficulty or expense.

39.    All of the foregoing violations are also violations of the 1991 Americans with Disability Act Accessibility Guidelines (ADAAG), and the 2010 Standards for Accessible Design, as promulgated by the U.S. Department of Justice.

40.    The discriminatory violations described in paragraph 38 are not an exclusive list of the Defendant's ADA violations.  Plaintiff requires the inspection of the Defendant's places of public accommodation in order to photograph and measure all of the discriminatory acts violating the ADA and all of the barriers to access and to determine all of the areas of non-compliance with the Americans with Disabilities Act to which he was denied access.

41.    The individual Plaintiff, and all other individuals similarly situated, have been denied access to, and have been denied the benefits of services, programs and activities of the Defendant's building and its facilities, and have otherwise been discriminated against and damaged by the Defendant because of the Defendant's ADA violations, as set forth above.  The individual

Plaintiff, and all others similarly situated, will continue to suffer such discrimination, injury and damage without the immediate relief provided by the ADA as requested herein.

42.     Defendant has discriminated against the individual by denying individuals access to the full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations of its place of public accommodation or commercial facility in violation of 42 U.S.C. § 12181 et seq. and 28 CFR 36.302 et seq.  Furthermore, the Defendant continues to discriminate against the Plaintiff, and all those similarly situated, by failing to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and by failing to take such efforts that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

43.     Plaintiff is without adequate remedy at law and is suffering irreparable harm. Considering the balance of hardships between the Plaintiff and Defendant, a remedy in equity is warranted.

44.     Plaintiff has retained the undersigned counsel and is entitled to recover attorney's fees, costs and litigation expenses from the Defendant pursuant to 42 U.S.C. § 12205 and 28 CFR 36.505.

45.     Defendant is required to remove the existing architectural barriers to the physically disabled when such removal is readily achievable for its place of public accommodation that have existed prior to January 26, 1992, 28 CFR 36.304(a); in the alternative, if there has been an alteration to Defendant's place of public accommodation since January 26, 1992, then the Defendant is required to ensure to the maximum extent feasible, that the altered portions of the

facility are readily accessible to and useable by individuals with disabilities, including individuals who use wheelchairs, 28 CFR 36.402; and finally, if the Defendant's facility is one which was designed and constructed for first occupancy subsequent to January 26, 1993, as defined in 28 CFR 36.401, then the Defendant's facility must be readily accessible to and useable by individuals with disabilities as defined by the ADA.

46.     Notice to Defendant is not required as a result of the Defendant's failure to cure the violations by January 26, 1992 (or January 26, 1993, if a Defendant has 10 or fewer employees and gross receipts of $500,000 or less).   All other conditions precedent have been met by Plaintiff or waived by the Defendant.

47.     Pursuant to 42 U.S.C. § 12188, this Court is provided with authority to grant Plaintiff injunctive relief, including an order to require the Defendant to alter the Hampton Inn and the parking lot, access aisles and walkways along the accessible route, to make those facilities readily accessible and useable to the Plaintiff and all other persons with disabilities as defined by the ADA; or by closing the facilities until such time as the Defendant cures its violations of the ADA.

**WHEREFORE,** Plaintiff respectfully requests:

a.     That the Court issue a Declaratory Judgment that determines that the Defendant at the commencement of the subject lawsuit is in violation of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 et seq.

b.     Injunctive relief against the Defendant including an order to make all readily achievable alterations to the facility; or to make such facility readily accessible to and usable by individuals with disabilities to the extent required by the ADA; and to require

the Defendant to make reasonable modifications in policies, practices or procedures, when such modifications are necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities; and to take such steps that may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services.

c.      An award of attorney's fees, costs and litigation expenses pursuant to 42 U.S.C. § 12205, 28 U.S.C. § 1920, 42 U.S.C. § 2000e-5(k), and 42 U.S.C. § 12117(a).

d.      Such other relief as the Court deems just and proper, and/or is allowable under Title III of the Americans with Disabilities Act.

## DESIGNATION OF PLACE OF TRIAL

Plaintiff, Fred Nekouee, by and through his undersigned counsel, hereby designates Denver, Colorado as the place of trial for this action.

Respectfully submitted,

s/Robert J. Vincze_____
Robert J. Vincze (CO #28399)
Law Offices of Robert J. Vincze
PO Box 792
Andover, Kansas 67002
Phone: 303-204-8207
Email: vinczelaw@att.net

*Attorney for Plaintiff Fred Nekouee*